IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Caroline Chevalier,

    Plaintiff,

  v.                              Case No. 2:13-cv-609

Kimberly Barnhart,

    Defendant.


OPINION AND ORDER

    This is a diversity action brought by plaintiff Caroline Chevalier against defendant Kimberly Barnhart.  Plaintiff is a citizen of Windsor, Canada, and defendant is a citizen of the State of Ohio.  Plaintiff alleges that beginning in July of 2007, she advanced several loans of money to defendant totaling $122,708, not including interest.  Complaint, ¶ 6.  These loans included: funds in the amount of approximately $70,000, to be devoted to expenses relating to the defendant's residence in Logan, Ohio; loans of $13,700 and $10,000 in 2007 and 2010 for the payment of defendant's credit card debt; sums in the amount of $2,500 and $7,500 advanced in 2008 and 2009 for defendant's legal fees; and plaintiff's purchase of a Toyota Prius at a cost of $19,008 in 2008, which was titled in defendant's name and was allegedly intended for defendant's use for a period of one year.  Complaint, ¶¶ 7-12. The complaint asserts claims for breach of contract, default on the loans, unjust enrichment, fraud, constructive lien/trust, and foreclosure of the real property.  No loan documents are attached to the complaint.

    This matter is before the court on defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject

matter jurisdiction.  Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss.  DXL, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004); Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks.  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack is a challenge to the sufficiency of the complaint, and in considering the motion the court must take the material allegations of the complaint as true and construed in the light most favorable to the nonmoving party.  Id.; see also, Ohio National Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).

In contrast, a factual attack is a challenge to the factual existence of subject matter jurisdiction.  No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  Ritchie, 15 F.3d at 598; Moir, 895 F.2d at 269.  In matters regarding subject matter jurisdiction, the court may look to evidence outside the pleadings.  Nichols v. Muskingum College, 318 F.3d 674, 677 (6th Cir. 2003).  A Rule 12(b)(1) motion, when accompanied by evidentiary support, is not converted into a motion for summary judgment, and the court is empowered to resolve factual disputes.  Moir, 895 F.2d at 269; Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986).  The district court has wide discretion to consider affidavits and

documents in resolving disputed jurisdictional facts. Ohio National Life Ins., 922 F.2d at 325. "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." Golden v. Gorno Bros., Inc., 410 F.3d 879, 881 (6th Cir. 2005).

Defendant contends that this case falls within the domestic relations exception to federal jurisdiction. Thus, defendant makes a factual attack on jurisdiction. Defendant argues that this case should be dismissed for lack of subject matter jurisdiction, or in the alternative, that this case should be stayed pending the completion of divorce proceedings currently pending between the same parties in Windsor, Ontario, a province of Canada. In support of the motion, defendant has submitted a certified copy of an application for divorce which she filed against plaintiff on August 20, 2013, in the Superior Court of Justice, Windsor, Ontario.

According to this application, plaintiff and defendant married on July 7, 2007, in Leamington (a municipality in Essex County, Ontario), and separated on November 1, 2010. Doc. 7-1, p. 4. In her petition, defendant requests a divorce, support for herself, and an equalization of net family properties, or, in the alternative, a declaration that the parties' net family property has been equalized. Doc. 7-1, p. 5. Defendant states that upon her marriage to plaintiff, she left her employment at Ohio State University and resided with plaintiff in Windsor, Ontario, where she assisted plaintiff, without compensation, in managing and improving plaintiff's rental property. Defendant claims that plaintiff provided her with funds during the marriage so that she

3

could maintain her residence in Ohio and have monies for her personal needs. Defendant states that she sustained injuries during a confrontation between plaintiff and Logan, Ohio, police officers when she stepped between plaintiff and the officers. Doc. 7-1, p. 6. She alleges that she was forced to settle her civil action against the police department and the officer involved for a fraction of her damages after plaintiff refused to testify as a witness on her behalf. Defendant also notes that plaintiff commenced the instant action in Ohio seeking repayment of monies given to defendant during the marriage for her support, characterizing these funds as "loans." Doc. 7-1, p. 7. Plaintiff does not contest that these divorce proceedings are pending.

Under the domestic relations exception, federal courts are precluded from exercising jurisdiction over cases whose substance is generally domestic relations. Chambers v. Michigan, 473 Fed.App'x 477, 478 (6th Cir. 2012)(citing Barber v. Barber, 62 U.S. 582, 584 (1858)); see also Firestone v. Cleveland Trust Co., 654 F.2d 1212, 1215 (6th Cir. 1981)("[F]ederal courts traditionally have refrained from exercising jurisdiction over cases which in essence are domestic relations disputes.").

The domestic relations exception "is supported by sound policy considerations." Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992).

> Issuance of decrees of this type not infrequently involves retention of jurisdiction by the court and deployment of social workers to monitor compliance. As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of

4

> judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and an half in handling issues that arise in the granting of such decrees.

Id. at 703-04.  Other policy considerations include: that states have a strong interest in domestic relations matters; that the federal adjudication of such disputes increases the chances of incompatible or duplicative federal and state court decrees; that the subject of domestic relations belongs to the laws of the states, not to the laws of the United States; and that such cases serve no particular federal interest while they crowd the federal court docket.  See Vaughan v. Smithson, 883 F.2d 63, 65 (10th Cir. 1989); Firestone, 654 F.2d at 1215.

The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt, 504 U.S. at 703.  The Supreme Court held in Ankenbrandt that "the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree[.]"  Ankenbrandt, 504 U.S. at 704.

The domestic relations exception does not apply to suits that are actually tort or contract claims having only domestic relations overtones.  For example, in Ankenbrandt, the Supreme Court held that the domestic relations exception did not apply in that case to the tort claims brought by a mother on behalf of her children against their father for alleged physical and sexual abuse. Ankenbrandt, 504 U.S. at 706; see also, Drewes v. Ilnicki, 863 F.2d 469, 471 (6th Cir. 1988)(tort claims for intentional infliction of emotional distress and interference with employment brought by

5

father against ex-wife after divorce, alleging that ex-wife moved out of state, concealed his children's whereabouts, and prevented him from exercising visitation rights, did not fall within exception); Elam v. Montgomery County, 573 F.Supp. 797, 801 (S.D.Ohio 1983)(exception did not apply to civil rights action brought by father against sheriff's deputies and other county defendants concerning the manner in which deputies removed his daughter from his home).  By the same token, federal courts lack jurisdiction where the action, although asserting claims sounding in contract, tort, or constitutional violations, "is a mere pretense and the suit is actually concerned with domestic relations issues."  Danforth v. Celebrezze, 76 Fed.App'x 615, 616 (6th Cir. 2003)(citing Drewes, 863 F.2d at 471).

The mere fact that a plaintiff has framed claims in terms of breach of contract or tort does not automatically place the case outside the domestic relations exception.  Vaughan, 883 F.2d at 65.

> The proper inquiry focuses on the type of determination the federal court must make in order to resolve the claim.  If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent, then the domestic relations exception is applicable.

Id.; see also Firestone, 654 F.2d at 1216 ("It is incumbent upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated.").

The scope of the domestic relations exception has been the subject of conflicting interpretations in the Sixth Circuit.  In Catz v. Chalker, 142 F.3d 279 (6th Cir. 1998), overruled on other grounds as stated in Coles v. Granville, 448 F.3d 853, 859 n. 1

6

(6th Cir. 2006), a former husband brought civil rights actions against his former wife and her attorneys alleging that the procedures in the state divorce trial violated his due process rights.  The Sixth Circuit narrowly construed Ankenbrandt as holding that the domestic relations exception applies "only where a plaintiff positively sues in federal court for divorce, alimony, or child custody."  Id. at 292; see also Callahan v. Callahan, 247 F.Supp.2d 935, 944 (S.D.Ohio 2002)(post-divorce action brought by ex-wife seeking to hold ex-husband in contempt of divorce decree due to his failure to transfer all of his interest in his ERISA pension plan to her was not an action specifically for divorce and domestic relations exception did not apply).

    However, a year later, another panel of the Sixth Circuit took a broader view of the domestic relations exception in McLaughlin v. Cotner, 193 F.3d 410 (6th Cir. 1999).  That case involved a former wife's claim for breach of a separation agreement for the sale of real estate.  This agreement had been incorporated into the divorce decree, and was also the subject of a pending state court action. Plaintiff argued that the domestic relations exception did not apply because she was merely suing for breach of contract and tortious interference with contract.  Id. at 413.  The court rejected this argument, noting that plaintiff was "attempting to disguise the true nature of the action by claiming that she is merely making a claim for damages based on a breach of contract." Id.  The court concluded that because the alleged contract was incorporated into the divorce decree, the case "involve[d] issues arising out of conflict over a divorce decree" and fell within the domestic relations exception.  Id. at 413.  The court went on to

hold that the federal court lacked jurisdiction, "as this case is not a tort or contract suit that merely has domestic relations overtones, but is one seeking a declaration of rights and obligations arising from marital status." Id. at 414.

The Sixth Circuit in McLaughlin noted that the case before it was similar to Allen v. Allen, 518 F.Supp. 1234 (E.D.Pa. 1981), where, despite the pendency of divorce proceedings and other state court actions concerning the marital property at issue, the husband filed another state court action for breach of monetary obligations contained in a separation agreement, which the wife removed to federal court. See id. at 414. Although the husband pleaded claims for breach of contract and fraud, the court in Allen noted that these claims and the pending state court actions "contain overlapping factual and legal matrices" with "a multiplicity of intertwined suits, the dominant theme of which is a dispute over the ownership of marital property." Allen 518 F.Supp. at 1237. The Allen court also stated that the case before it was one in which "the parties are attempting to play one court system off against the other." Id. The Allen court granted the husband's motions to dismiss and for remand, concluding that "this is a clear case for the application of the domestic relations exception." Id. The McLaughlin court observed that a similar rationale applied to the case before it, as the property at issue was also the subject of a pending state court action. McLaughlin, 193 F.3d at 414-415.

The McLaughlin panel also cited with approval the Sixth Circuit's previous decision in Firestone. Id. at 415. Firestone involved an action brought by the former Mrs. Firestone against her ex-husband and the trustee of his trust assets, alleging that Mr.

8

Firestone failed to meet his support obligations under the divorce settlement, and seeking to compel him to use his trust income to meet his support obligations. Firestone, 654 F.2d at 1217. The Firestone court held that the district court acted properly in declining jurisdiction. Id. The Firestone court noted that none of the sums claimed had been reduced to judgment in the Florida state court, and that the district court would have to hear extensive evidence concerning the parties' needs and finances, and would have to interpret and apply the provisions of the divorce decree to determine what sums were due. Id. While the Firestone case was pending, the Florida state court found that Mrs. Firestone was in contempt of the divorce decree and relieved Mr. Firestone of his obligation to pay alimony. The Firestone court observed that any declaratory and injunctive relief compelling Cleveland Trust to pay Mr. Firestone's support obligations from trust income would have interfered with the pending state court proceedings and conflicted with the Florida contempt order. Id.

In Chambers v. Michigan, the ex-wife filed an action for declaratory and injunctive relief against Michigan state officials, challenging the constitutionality of the state court's decision to consider certain assets and property in calculating the ex-husband's income, upon which the payment of alimony was based. Plaintiff requested that the state court be enjoined from using property she characterized as her "federally protected ERISA, marital and personal property" to determine the amount of alimony owed. Chambers, 473 Fed.App'x at 479. Plaintiff argued that the domestic relations exception did not apply because she was not seeking a divorce, alimony, or child custody decree. Id. The

9

Sixth Circuit rejected this argument, concluding that because plaintiff's complaint revolved around a state court order involving alimony, jurisdiction was lacking under the domestic relations exception. Id.

In United States v. MacPhail, 149 Fed.App'x 449, 455-56 (6th Cir. 2005), the Sixth Circuit concluded that cross-claims filed by ex-spouses seeking to recover the amount of a refund erroneously paid to the husband by the Internal Revenue Service for the tax year immediately preceding the year their divorce decree became final fell within the domestic relations exception. The court noted that resolution of the indemnification cross-claims required allocation of the refund into some combination of separate or marital property in accordance with Ohio domestic relations law. Id. The court concluded that the "division of property as either separate or marital raises exactly the kind of 'delicate issue[]' that is more 'appropriate for the federal courts to leave ... to the state courts.'" Id. at 456 (quoting Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 13 (2004)).

In the instant case, plaintiff has framed her complaint in terms of contract and tort claims. She has not specifically asked this court to issue a divorce decree or to resolve questions of alimony. However, this case is the functional equivalent of divorce proceedings insofar as plaintiff has, in effect, asked this court to determine her marital property rights and obligations with respect to the monies referred to in the complaint. The allocation of marital property and the award of alimony are important components of any divorce proceeding. The resolution of plaintiff's claims in this case would involve the same factual and

legal issues that are currently before the Superior Court of Justice, Windsor, Ontario as part of the pending divorce proceedings. The assets that plaintiff seeks to recover involve sums which she distributed to defendant during the course of their marriage. As part of the divorce proceedings, defendant has requested that the court order support for herself, and that the court perform an equalization of net family properties, or, in the alternative, a declaration that the parties' net family property has been equalized. This is not a case involving claims with mere domestic overtones. Rather, the issues of property ownership which plaintiff asks this court to resolve are "inextricably intertwined" with the same property issues before the Canadian court in the pending divorce proceedings. See Kahn v. Kahn, 21 F.3d 859, 861 (8th Cir. 1994)(where plaintiff's tort claims were "inextricably intertwined" with the prior property settlement incident to the divorce proceeding, subject matter jurisdiction does not lie in federal court).

The policy reasons behind the domestic relations exception are also relevant in this case. The Canadian court has a special proficiency in matters concerning the division of marital property. The province of Ontario has a strong interest in domestic relations matters. There is also a particular danger in this case that federal adjudication of this action would increase the risk of incompatible federal and Canadian decrees. Canada recognizes same-sex marriages. In the State of Ohio, same-sex marriages are illegal, see Ohio Const. art. XV, §11; Ohio Rev. Code §3101.01(C) (although these Ohio provisions have recently come under constitutional attack, see Obergefell v. Wymyslo, __ F.Supp.2d __,

11

2013 WL 6726688 (S.D.Ohio Dec. 23, 2013)). Any Ohio or Canadian law which might impact the property rights of either party by reason of their marriage in Canada would not be applicable under Ohio law. See Ohio Rev. Code §3101.01(C)(3)-(4). This conflict makes it more probable that plaintiff, like the plaintiff in Allen, is attempting to "play one court system off against the other." Allen, 518 F.Supp. at 1237.

This court concludes that the division of the parties' property involves "delicate issues of domestic relations" appropriately left to the Canadian court. See Newdow, 542 U.S. at 13. The court holds that the domestic relations exception applies, and that this court lacks subject matter jurisdiction in this case. Defendant's motion to dismiss (Doc. 7) for lack of subject matter jurisdiction based on the domestic relations exception to federal court jurisdiction is granted.

Date: January 15, 2014                   s/James L. Graham
                                         James L. Graham
                                         United States District Judge